# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

A.P.I., INC. ASBESTOS SETTLEMENT
TRUST and A.P.I., INC.,

                Plaintiffs,

     vs.

HOME INSURANCE COMPANY,
ZURICH AMERICAN INSURANCE
COMPANY, individually and as successor
to Home Insurance Company and Zurich
Insurance Company, ZURICH
AMERICAN INSURANCE COMPANY
OF ILLINOIS, individually and as
successor to Home Insurance Company,
and STEADFAST INSURANCE
COMPANY, individually and as successor
to Home Insurance Company,

                Defendants.

Civil Action No.:  09-cv-00975-JRT-JJG

**MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANTS'
MOTION FOR JUDGMENT ON
THE PLEADINGS**

Oral Argument Requested

---

# TABLE OF CONTENTS

PAGE

INTRODUCTION ................................................................................................. 1

ARGUMENT SUMMARY ................................................................................... 3

STATEMENT OF FACTS ................................................................................... 7

    A.    THE RECAPITALIZATION ................................................................ 7

    B.    NHID OVERSIGHT OF HOME CONTINUES ........................................... 9

    C.    API CLAIMS AGAINST HOME – AUGUST 2002 ................................ 10

    D.    PLAINTIFFS BRING THIS ACTION – MARCH 2009 .......................... 11

STANDARD OF REVIEW ................................................................................. 11

ARGUMENT ...................................................................................................... 13

    I.    PLAINTIFFS LACK STANDING TO BRING THEIR CLAIMS ............. 13

        A.    PLAINTIFFS CANNOT MAINTAIN THE FRAUDULENT
            TRANSFER CLAIM ........................................................................ 13

        B.    PLAINTIFFS CANNOT MAINTAIN ANY OTHER
            COMMON CLAIMS ....................................................................... 14

    II.    ALL CLAIMS ARISING AFTER MARCH 5, 2003 THAT ARE
        BASED ON DEFENDANTS' ALLEGED VICARIOUS
        LIABILITY FOR HOME'S CONDUCT FAIL AS A MATTER
        OF LAW ......................................................................................... 16

        A.    DEFENDANTS CANNOT BE ALTER EGOS OF HOME
            AFTER THE NHID TOOK CONTROL OF HOME AS A
            MATTER OF LAW ......................................................................... 17

        B.    PLAINTIFFS' *RESPONDEAT SUPERIOR* ALLEGATIONS
            FAIL AS A MATTER OF LAW AFTER THE NHID TOOK
            CONTROL OF HOME ..................................................................... 18

        C.    PLAINTIFFS' JOINT VENTURE ALLEGATIONS FAIL AS
            A MATTER OF LAW AFTER THE NHID TOOK
            CONTROL OF HOME ..................................................................... 19

III.   PLAINTIFFS' REMAINING CLAIMS ARE TIME-BARRED ................ 20

    A.   PLAINTIFFS' FRAUDULENT TRANSFER CLAIM IS
        TIME-BARRED.............................................................................. 20

    B.   PLAINTIFFS' TORTIOUS INFERENCE WITH
        CONTRACTUAL RELATIONS CLAIM IS TIME-
        BARRED...................................................................................... 22

    C.   THE HOME INSURANCE CLAIMS ARE TIME-BARRED........ 22

IV.   PLAINTIFFS' VICARIOUS LIABILITY THEORIES ALSO FAIL
    AS A MATTER OF LAW .......................................................................... 25

    A.   THE NHID ORDERS DEMONSTRATE THAT
        PLAINTIFFS' ALTER EGO AND RESPONDEAT
        SUPERIOR THEORIES FAIL AS A MATTER OF LAW ........... 25

    B.   PLAINTIFFS' JOINT VENTURE CLAIM FAILS AS A
        MATTER OF LAW ....................................................................... 27

V.   THE COMPLAINT FAILS TO PROVIDE A BASIS FOR
    SUCCESSOR LIABILITY ........................................................................ 27

VI.   PLAINTIFFS' CONTRIBUTION CLAIM FAILS AS A MATTER
    OF LAW.................................................................................................... 29

VII.   THIS COURT SHOULD DECLINE JURISDICTION OVER
    PLAINTIFFS' CLAIMS AS A MATTER OF COMITY .......................... 31

CONCLUSION ............................................................................................... 34

# TABLE OF AUTHORITIES

## CASES

Amasia Acoustics, LLC v. GN Hearing Care Corp.,
    No. A08-0139, 2008 WL 5137087 (Minn. App. Feb. 17, 2009) .......................... 19

Ashcroft v. Iqbal,
    129 S. Ct. 1937 (2009) ....................................................... 12, 26, 27, 29

Ass'n of Mill and Elevator Mutual Insurance Co. v. Barzen Int'l, Inc.,
    553 N.W.2d 446 (Minn. App. 1996) ...................................................... 18

Avondale Shipyards, Inc. v. Vessel Thomas E. Cuffe,
    434 F. Supp. 920 (E.D. La. 1997) ......................................................... 31

Bekis v. Schilling,
    357 N.W.2d 362 (Minn. App. 1984) ...................................................... 29

Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt., L.P.,
    435 F.3d 396 (3d Cir. 2006) ............................................................... 21

In re Bridge Information System, Inc.,
    344 B.R. 587 (E.D. Mo. 2006) ............................................................ 14

Brooklyn Union Gas Co. v. Century Indemnity Co.,
    No. 403087/2002, 2005 WL 6226508 (N.Y. Sup. Ct. Jan. 10, 2005) ............. 16, 32

Busch v. Mann,
    397 N.W.2d 391 (Minn. App. 1986) ...................................................... 18

In re Central Heating & Air Conditioning, Inc.,
    64 B.R. 733 (Bankr. N.D. Ohio 1986) ................................................... 15

Clos v. Minnesota,
    No. 06-4916, 2007 WL 3046229 (D. Minn. Oct. 16, 2007) ................................ 18

Commissioner of Insurance v. Arcilio,
    561 N.W.2d 412 (Mich. Ct. App. 1997)................................................... 14

Concordia College Corp. v. W.R. Grace & Co.,
    999 F.2d 326 (8th Cir. 1993) .............................................................. 20

Consolidated Edison Co. of New York, Inc. v. America Home Assurance Co.,
    No. 0600527/2001 (N.Y. Sup. Ct. Mar. 29, 2005)......................................... 16, 33

Cope v. Anderson,
    331 U.S. 461 (1947) ............................................................................. 23

Corcoran v. Frank B. Hall & Co.,
    545 N.Y.S.2d 278 (N.Y. App. Div. 1989) ...................................... 13, 16

Davis v. Johnson,
    415 N.W.2d 755 (Minn. App. 1987) ..................................................... 17

Duxbury v. Spex Feeds, Inc.,
    681 N.W.2d 380 (Minn. App. 2004) ..................................................... 19

Florida Dep't of Insurance v. Chase Bank of Texas Nat'l Ass'n,
    No. 3:99CV1254, 2000 WL 36065 (N.D. Tex. Jan. 14, 2000) ............... 15

Florida State Board of Admin. v. Green Tree Finance Corp.,
    270 F.3d 645 (8th Cir. 2001) ................................................................ 12

Ford Motor Credit Co. v. Midwest Diesel Serv., Inc.,
    Nos. Civ. 02-2924, 02-2925, 2003 WL 22901837 (D. Minn. Nov. 26, 2003) ....... 28

Four Star Insurance Agency, Inc. v. Hawaiian Electric Industrial, Inc.,
    89 Haw. 427 (1999) ......................................................................... 13, 16

Frontier Insurance Co. v. America Title Servs.,
    838 So. 2d 1178 (Fla. Ct. App. 2003) .................................................. 33

Fuhrman v. United America Insurors,
    269 N.W.2d 842 (Minn. 1978) .............................................................. 33

Glushakow v. Confederation Life Insurance Co.,
    No. 94-4201, 1994 WL 803204 (D.N.J. Dec. 5, 1994) .......................... 15

Goodman v. McDonnell Douglas Corp.,
    606 F.2d 800 (8th Cir. 1979) ................................................................ 30

Great Plains Trust Co. v. Union Pacific Rail Road,
    492 F.3d 986 (8th Cir. 2007) ................................................................ 21

Hagert v. Glickman, Lurie, Eiger & Co.,
    520 F. Supp. 1028 (D. Minn. 1981) ...................................................... 21

Hanten v. School District of Riverview Gardens,
    183 F.3d 799 (8th Cir. 1999) ................................................................ 12

Hart v. Commissioner of Internal Revenue,
    730 F.2d 1206 (8th Cir. 1984) ............................................................... 12

Isermann v. MBL Life Assurance Corp.,
    605 N.W.2d 210 (Wis. Ct. App. 1999) .................................................. 33

Johnson v. City of Shorewood,
    No. A06-2353, 2008 WL 434680 (Minn. App. Feb. 19, 2008) ............ 23

Jones v. Boyd Transfer & Storage Co.,
    323 F.2d 998 (8th Cir. 1963) ................................................................ 30

In re K-Telegraph Int'l Inc., Securities Litigation,
    300 F.3d 881 (8th Cir. 2002) ................................................................ 12

Klehr v. A.O. Smith Corp.,
    87 F.3d 231 (8th Cir. 1996) ............................................................ 20, 21

Lingenfelter v. Stoebner,
    No. 03-CV-5544, 2005 WL 1225950 (D. Minn. May 23, 2005) .......... 23

Markewich ex rel. Medtronic, Inc. v. Collins,
    No. 08-92, 2009 WL 1323827 (D. Minn. May 11, 2009) ..................... 12

McNeely v. Clayton & Lambert Manufacturing Co.,
    292 F. Supp. 232 (D. Minn. 1968) ........................................................ 13

Medcam, Inc. v. JDS Uniphase Corp.,
    No. 06-1509, 2006 WL 2095434 (D. Minn. July 27, 2006) .................. 22

In re Michener,
    217 B.R. 263 (Bankr. D. Minn. 1998) .............................................. 13-14

Motlow v. S. Holding & Securities Corp.,
    95 F.2d 721 (8th Cir. 1938) ...................................................... 3, 13, 27

Nebraska State Bank v. Jones,
    846 F.2d 477 (8th Cir. 1988) ................................................................ 13

Niccum v. Hydra Tool Corp.,
    438 N.W.2d 96 (Minn. 1989) ................................................................ 28

Nuessmeier Electric, Inc. v. Weiss Manufacturing Co.,
    632 N.W.2d 248 (Minn. App. 2001) ................................................ 29, 30

Northwest Nat'l Insurance Co. ex rel Swanberg v. Carlson,
    711 N.W.2d 821 (Minn. App. 2006) ........................................................ 23

Olivine Corp. v. United Capitol Insurance Co.,
    122 Wash. App. 374 (Wash. Ct. App. 2004)............................................. 33

Parkhill v. Minn. Mutual Life Insurance Co.,
    174 F. Supp. 2d 951 (D. Minn. 2000) ..................................................... 24

Quackenbush v. Superior Court,
    79 Cal. App. 4th 867 (Cal. Ct. App. 2000).............................................. 13

In re Real Marketing Services, LLC,
    309 B.R. 783 (S.D. Cal. 2004) ................................................................ 16

Rehnberg v. Minnesota Homes, Inc.,
    52 N.W.2d 454 (Minn. 1952) .......................................................... 19, 27

Reserve Insurance Co. v. Village of Big Lake,
    230 N.W.2d 47 (Minn. 1975) .................................................................. 30

SICK, Inc. v. Motion Control Corp.,
    No. 01-1496, 2003 WL 21448864 (D. Minn. June 19, 2003)................... 26

Schermer v. BCBSM, Inc.,
    Civ. No. 08-878, 2009 WL 928314 (D. Minn. Mar. 31, 2009).............. 29

Sladek v. Northwest Airlines, Inc.,
    No. 01-70, 2001 WL 1640054 (D. Minn. Sept. 21, 2001) ...................... 12

State v. Altus Finance, S.A.,
    36 Cal. 4th 1284 (Cal. 2005) ............................................................ 13, 14

Steele v. Armour & Co.,
    583 F.2d 393 (8th Cir. 1978) .................................................................. 20

Syverson v. Firepond, Inc.,
    383 F.3d 745 (8th Cir. 2004) ............................................................11-12

Tamko Roofing Products, Inc. v. Smith Engineering Co.,
    450 F.3d 822 (8th Cir. 2006) .................................................................. 20

United States v. Spencer,
    No. Civ. 04-141, 2005 WL 2648688 (D. Minn. Oct. 17, 2005).............. 17

Urban v. America Legion Post 184,
        695 N.W.2d 153 (Minn. App. 2005) ................................................................ 18, 26

Veldhuizen v. A.O. Smith Corp.,
        839 F. Supp. 669 (D. Minn. 1993) ........................................................................ 24

Victoria Elevator Co. of Minneapolis v. Meriden Grain Co.,
        283 N.W.2d 509 (Minn. 1979) ......................................................................... 5, 17

In re Vioxx Products Liability Litigation,
        522 F. Supp. 2d 799 (E. D. La. 2007) .................................................................. 21

Virnig v. Smith,
        90 N.W.2d 241 (Minn. 1958) ............................................................................... 27

Wallin v. Minnesota Dep't of Corrections,
        598 N.W.2d 393 (Minn. App. 1999) .................................................................... 20

Westcott v. City of Omaha,
        901 F.2d 1486 (8th Cir. 1990) ............................................................................. 12

Weston v. McWilliams & Assocs., Inc.,
        716 N.W.2d 634 (Minn. 2006) ............................................................................. 30

White v. Jorgenson,
        322 N.W.2d 607 (Minn. 1982) ............................................................................. 26

## STATUTES AND RULES

Fed. R. Civ. P. 12(c) ................................................................................ 1, 11, 12, 34

Minn. Stat. § 60B.01 (2005) .......................................................................... 31

Minn. Stat. § 60B.03 (2005) .......................................................................... 32

Minn. Stat. § 541.05 (2000) ........................................................................... 20

N.H. Rev. Stat. Ann. § 401-B:14 (2009) ......................................................... 9

N.H. Rev. Stat. Ann. § 401-B:1 (2009) ........................................................... 8

N.H. Rev. Stat. Ann. § 401-B:3 (2009) ....................................................... 8, 21

N.H. Rev. Stat. Ann. § 402-C:21 (2009) ............................................. 13, 27, 32

N.H. Rev. Stat. § 402-C:25 (1969) ............................................................................ 3, 13

N.H. Rev. Stat. Ann. § 402-C:28 (2009) ...................................................................... 31

N.H. Rev. Stat. Ann. § 402-C:30 (2009) ...................................................................... 32

N.H. Rev. Stat. Ann. § 402-C:31 (2009) ...................................................................... 32

N.H. Rev. Stat. Ann. § 402-C:32 (2009) ...................................................................... 32

N.H. Rev. Stat. Ann. § 402-C:54 (2009) ...................................................................... 32

N.H. Rev. Stat. Ann. § 402-C:55 (2009) ...................................................................... 32

N.H. Rev. Stat. Ann. § 402-C:57 (2009) ...................................................................... 32

N.H. Rev. Stat. Ann. § 402-C:58 (2009) ...................................................................... 32

N.H. Rev. Stat. Ann. § 402-C:59 (2009) ...................................................................... 32

N.H. Rev. Stat. Ann. § 402-C:60 (2009) ...................................................................... 32

N.H. Rev. Stat. Ann. § 541-A:32 (2009) ...................................................................... 32

Defendants Zurich American Insurance Company, Zurich American Insurance Company of Illinois and Steadfast Insurance Company ("Defendants") respectfully submit this memorandum of law in support of their motion, pursuant to Federal Rule of Civil Procedure 12(c), for judgment on the pleadings dismissing the Amended Complaint ("Complaint") filed by Plaintiffs A.P.I., Inc. Asbestos Settlement Trust ("API Trust") and A.P.I., Inc. ("API").

## **INTRODUCTION**

Plaintiffs bring this action to obtain coverage on insurance policies that API purchased in the 1970s (the "Policies") from The Home Insurance Company, which is in liquidation.  But Plaintiffs are not currently attempting to recover from Home.  Instead, Plaintiffs assert that Defendants should be liable for Home's alleged insurance obligations under the Policies, even though Defendants never issued any insurance policies to API. The basis for Plaintiffs' extraordinary contention is a transaction that was consummated fourteen years ago by which the then-parent company of Home was recapitalized (the "Recapitalization").

Plaintiffs attempt to frame the Recapitalization as a nefarious plot by Defendants to gain control over Home and loot Home's assets.  In truth, as demonstrated by a voluminous public record, the New Hampshire Insurance Department ("NHID"), the regulator with primary jurisdiction over Home, approved this transaction as fair and

reasonable to Home and its policyholders in an Order dated May 26, 1995 (the "Approval Order", attached as Exhibit 1 to the Affidavit of Joseph G. Davis submitted herewith).[1]

The Approval Order was the end result of months of investigation; discovery; a contested public hearing that included fact and expert testimony, including testimony from two leading actuarial firms; consideration of the objections of creditors and policyholders; and input and approval from many sister states' insurance departments.  From the day the Recapitalization closed, the NHID closely supervised Home under a series of supervisory orders and through the presence of a full-time, on-site monitor and an *ex-officio* member of Home's Board of Directors.  Ultimately, on March 5, 2003, the NHID assumed complete control of Home through an Order of Rehabilitation ("Rehabilitation Order").  (See Ex. 2.)  An Order of Liquidation ("Liquidation Order") followed a few months later, in June 2003.  (See Ex. 3.)  Among other things, the Liquidation Order (1) vested a Liquidator exclusively with all rights of action of Home – rights still held exclusively by the Liquidator today; and (2) abated all proceedings against Home and enjoined all persons from commencing or continuing any judicial, administrative or other action or proceeding against Home or any of its agents.

Plaintiffs bring claims based on theories that the Recapitalization constituted a fraudulent transfer and wrongfully interfered with their contractual relations with Home.  (Complaint ¶¶ 71-79; 88-93.)  Plaintiffs also seek to hold Defendants vicariously liable for Home's alleged conduct under theories of alter ego, *respondeat superior* and "joint venture," all of which depend on Plaintiffs' erroneous characterization

---

[1]    Exhibits to the Davis Affidavit are herein referred to as Ex. __.

of the Recapitalization.  (Id. ¶¶ 47-63; 67-70; 80-87; 94-126 (Causes of Action 1-3, 5, 7,

9-14) (the "Home Insurance Claims").)  Plaintiffs' remaining claim is for contribution,

purporting to assert contribution rights that other insurers (with whom Plaintiffs have

settled) might have against Defendants.  (See id. ¶¶ 64-66.)  The Complaint, the New

Hampshire record and other material of which this Court can take judicial notice

demonstrate that Plaintiffs' claims, if they exist at all, belong to Home's Liquidator, and

that Plaintiffs' claims are in any case untenable, time-barred or both.

## ARGUMENT SUMMARY

### *Plaintiffs Impermissibly Attempt To Assert Claims Belonging To The New Hampshire Liquidator.*

Under the Liquidation Order, the court-appointed Liquidator was vested

with exclusive standing to "[p]rosecute any action which may exist on behalf of the

creditors, members, policyholders or shareholders of the insurer against … any other

person."  N.H. Rev. Stat. § 402-C:25 (XIII) (1969).  This action is an improper attempt to

avoid the liquidation process through the assertion of claims that are common to all

policyholders of Home and therefore belong exclusively to the Liquidator.

Plaintiffs lack standing to bring the fraudulent transfer claim.  The purpose

of a fraudulent transfer claim is to capture assets that belong to the debtor – here, Home –

and return them for the benefit of all creditors.  For this reason, the Eighth Circuit has

squarely held that to the extent such claims exist, they belong to the Liquidator as

statutory successor to the insurer, not to individual policyholders or creditors of the

insurer.  Motlow v. S. Holding & Secs. Corp., 95 F.2d 721, 724 (8th Cir. 1938).

Plaintiffs also lack standing to bring the Home Insurance Claims and tortious interference claims.  Those claims are based on the allegation that Defendants "mismanaged *Home's business* and drained *Home's assets*," leading to "*Home's insolvency* and *its* inability to compensate Plaintiffs."  (Complaint ¶ 6 (emphases added).)  As this passage demonstrates, Plaintiffs' claims are in no sense unique to API's dealings with Home or Defendants.  Rather, they claim that Defendants mismanaged "Home's business" and dissipated "Home's assets" to the detriment of all of Home's policyholders, not just API.  To the extent any such claims exist, they do not belong individually to Home's policyholders, but to the Liquidator.

### Plaintiffs' Claims Premised On Vicarious Liability Fail As A Matter Of Law.

Each of the methods by which Plaintiffs hope to impose vicarious liability on Defendants – under an alter ego, *respondeat superior* or joint venture theory of liability – fails as a matter of law.  Home has been under the complete control of the NHID since at least the March 5, 2003 Rehabilitation Order.  Pursuant to the Rehabilitation Order, the NHID secured all assets of Home, assumed all powers of the officers and managers of Home, and took on sole responsibility for all decisions relating to payment of claims under Home's policies.  Once the NHID assumed complete control over Home's operations pursuant to the Rehabilitation Order, Plaintiffs cannot possibly show that Home's corporate form should be disregarded to impose liability on Defendants, because at that point Plaintiffs cannot prove, as to Defendants, that "the

formalities of corporate existence [were] disregarded by one seeking to use it." <u>Victoria Elevator Co. of Minneapolis v. Meriden Grain Co.</u>, 283 N.W.2d 509, 512 (Minn. 1979).

Moreover, New Hampshire's Orders demonstrate that Plaintiffs' allegations of vicarious liability based on the Recapitalization are unsustainable. The Complaint is devoid of any facts suggesting that the Recapitalization, which was approved by the NHID after considerable regulatory and public scrutiny, was anything other than an arm's-length business arrangement. After the transaction, Home continued to exist as an independent corporate entity that operated under the regulatory eye of the NHID. The Approval Order made clear that the NHID would "through on-site monitoring, provide active oversight of the business and continuing operations of [Home]." (Ex. 1 (Approval Order) at 7.) The NHID continued to monitor and supervise Home until it placed Home into Rehabilitation and took it over entirely. Nothing in the Complaint reconciles allegations of vicarious liability with these facts.

### *Plaintiffs' Claims Are Also Time-Barred.*

Plaintiffs assert that they served Defendants with the Complaint on March 25, 2009. Plaintiffs' claims are governed by (at the longest) six-year statutes of limitations. Three facts that are readily apparent from the Complaint and public documents demonstrate that Plaintiffs' claims (other than for contribution, which fails to state a claim for other reasons) are time-barred:

1. The Recapitalization, upon which all of Plaintiffs' claims rest, occurred **nearly fourteen years before the Complaint was served**;

2. The Recapitalization was approved by the NHID and six other state insurance departments after **extended and public adjudicative**

**proceedings that were disclosed in numerous public filings and covered by national media**; and

3. API first brought the Home Insurance Claims directly against Home, failing to name or make any allegation against Defendants, in August 2002, **more than six years before the Complaint was served**.

Plaintiffs' claims for fraudulent transfer and intentional interference with contract arise directly out of the Recapitalization transaction, which closed fourteen years before this action commenced, in full public view. Those claims are clearly time-barred.

The Home Insurance Claims are also time-barred. Because the Home Insurance Claims rest on theories of vicarious liability, they are only theoretically viable if they accrued before March 5, 2003; after that date, Plaintiffs cannot demonstrate Defendants' vicarious liability as a matter of law. But the Home Insurance Claims that accrued before March 5, 2003 are likewise time-barred, because this case did not commence until March 25, 2009 – more than six years later. The best evidence that Plaintiffs' Home Insurance Claims accrued more than six years ago is that Plaintiffs brought those claims directly against Home in August 2002.

### *As A Matter Of Comity, This Court Should Decline Jurisdiction Over Plaintiffs' Claims.*

To the extent Plaintiffs' case or any part of it is not otherwise barred, the Court should not permit Plaintiffs to proceed out of deference to the New Hampshire Liquidation Court. The Liquidation Order enjoins each of Home's policyholders from proceeding with any action against Home, its agents or its representatives, in any forum except for the Liquidation Court. Given that Plaintiffs have chosen to sue Defendants as the Home – under various theories of vicarious and successor liability – the abatement

provisions of the Liquidation Order apply.  Moreover, as noted, the claims being sued on

here belong to the Liquidator.  Just as a New Hampshire Court would be expected to

grant comity to a liquidation order from this State, this Court should not allow Plaintiffs

to proceed with their Complaint here.

## STATEMENT OF FACTS

**A.     The Recapitalization.**

The Recapitalization encompassed a series of interconnected agreements

through which Home Holdings, Inc. ("HHI"), Home's parent corporation at the time, was

recapitalized.  (Complaint ¶¶ 39, 46.)  As a result of the Recapitalization, HHI received

capital and restructured its debt obligations, and Home received reinsurance coverage of

approximately $1.3 billion, a guaranteed investment return on its reserves (over which

Home maintained ownership), a $30 million line of credit, and claims- and policy-

management services, among other consideration.  (Id.; Ex. 4 - 9 (Recapitalization

Agreements).)  Because Home decided to go into run-off, and would not be renewing its

policies, an entity affiliated with Defendants contracted to gain access to Home's

underwriting records for the purpose of deciding whether to compete for the business of

Home's former policyholders.  (Complaint ¶ 46; Ex. 4 - 9.)

Because Home is a New Hampshire insurance company, the

Recapitalization was subject to approval by the NHID.  The NHID conducted a three-

month investigation into the transaction, ordered notice of a public hearing to Home's

policyholders and creditors, and presided over a two-day public hearing.  (Ex. 1

(Approval Order) at 1-2.)[2]  Any policyholder of Home had the right to request to intervene in the hearing, and many exercised that right.  N.H. Rev. Stat. Ann. §§ 401-B:3(VI) (2009), 541-A:32 (2009); (Ex. 1 (Approval Order) at 1-2.)  At the hearing, the Commissioner heard testimony from witnesses, including experts retained by the NHID to review the transactions, who were subjected to cross-examination.  In an effort to ensure the record was complete and all parties would be heard, the Commissioner offered to continue the hearing to allow for additional testimony (see Ex. 10 (NHID Hearing Transcript Vol. I) at 17) and kept the record open for another 45 days to receive additional submissions from interested parties (Ex. 1 (Approval Order) at 2).

       After this thorough, contested and public adjudication, on May 26, 1995, the NHID issued the Approval Order, which found, among other things:

- "The proposed transaction includes policyholder enhancements, at no additional cost to policyholders, not otherwise available to policyholders in liquidation or rehabilitation.  *The net present value of quantifiable policyholder enhancements should amount to, at least, $500 million.*"

- "The Applicants' plans or proposals to liquidate, sell the assets of, consolidate or merge [Home] or to make any other material change in their respective businesses or corporate structures or management, are *fair and reasonable to policyholders* of [Home]."

(Ex. 1 at 6-7 (emphases added).)

_____

[2]     Because the Recapitalization involved the purchase of slightly more than ten percent of the common stock of HHI, the transaction was subject to the approval of the NHID.  See N.H. Rev. Stat. Ann. §§ 401-B:1(III) (2009), 401-B:3(VI) (2009).

The NHID also established on-site monitoring facilities, gained access to Home's books and records, and installed a representative to sit as an *ex officio* member of Home's board.  (Id. at 8.)  Accordingly, on June 9, 1995, the NHID issued the Consent Order, which gave the NHID oversight of the "day-to-day business and operations of The Home."  (Ex. 11 (Consent Order) at 1.)

Although NHID decisions may be appealed to a New Hampshire court by "any person aggrieved" by the order, regardless of whether they participated in the proceedings, nobody – including API – appealed the Approval Order or otherwise sought to challenge it through proper channels.  See N.H. Rev. Stat. Ann. § 401-B:14 (2009).

## B.    NHID Oversight Of Home Continues.

In March 1997, the Commissioner entered an Order of Supervision ("Supervision Order"), which extended further the NHID's control over Home.  (Ex. 12 ¶¶ 2, 6.)  The Supervision Order stated that the "Commissioner shall oversee and supervise The Home for the purpose of continuing and intensifying an economic, actuarial and accounting review of the books, records and affairs of the Company so as to determine what future actions would be appropriate."  (Id. ¶ 2.)  The Supervision Order also set strict monetary limits on the transactions in which Home could engage without NHID approval and prohibited any transactions with Zurich affiliates without prior approval.  (Id. ¶ 4.)

Due to Home's deteriorating financial position, the Commissioner petitioned for the Rehabilitation Order.  Issued on March 5, 2003, the Rehabilitation Order directed the Rehabilitator to "secure all of the assets, property, books, records,

accounts and other documents of The Home," and prohibited anyone else from disposing

of any asset of Home without the NHID's approval.  (Ex. 2 at 1-2.)  The Rehabilitation

Order also authorized the Rehabilitator "in her discretion, to pay any and all claims for

losses, in whole or in part, under policies and contracts of insurance and associated loss

adjustment expenses."  (Id. at 3.)

      The Liquidation Order, issued on June 13, 2003, vested the Liquidator

"with title to all of the property, contracts and rights of action and all of the books and

records of The Home, wherever located, and in whomever's possession they may be

found."  (Ex. 3 at 2.)  The Order also barred all of Home's policyholders from suing

Home or its agents, and established a procedure – not unlike in a bankruptcy court –

whereby notices and proofs of claim are filed with the Liquidator under the jurisdiction of

the New Hampshire court.  (Id. at 3-4.)

## C.    API Claims Against Home – August 2002.

      In June 2002, St. Paul Fire and Marine Insurance Company ("St. Paul")

filed an action in the Ramsey County District Court, State of Minnesota, seeking a

declaration that it had no continuing obligation to provide coverage to API in connection

with claims for asbestos-related injuries arising from API's operations (the "State

Action").  On August 20, 2002, API responded to St. Paul's lawsuit by bringing claims

against several of its former insurance companies for asbestos-related claims, including

Home, but not including Defendants.  (Ex. 13 (State Complaint) at ¶¶ 35-49, 66-69.)

Home responded to API's claims on September 10, 2002, denying that API was entitled

to any further coverage under the Policies.  (Ex. 14 (Home Answer) at ¶¶ 8, 11, 16, 54,

63, 73.)  After the Rehabilitation and Liquidation Orders were entered, the proceedings against Home in the State Action were stayed.  (Ex. 15 (October 3, 2003 Stay Order) at 4.)  API proceeded against, and eventually settled with, the other insurance companies (the "Settling Insurers").  (Complaint ¶¶ 3, 10; Ex. 16 (March 10, 2008 Dismissal Order) at 1-2.)

### D.      Plaintiffs Bring This Action – March 2009.

Plaintiffs claim that they served Defendants with the Complaint on March 25, 2009.  (Ex. 17 (Affidavits of Compliance).)  Here, as in the State Action, API alleges that Home breached its Policies by misallocating defense and indemnity payments and failing to defend and pay claims.  But unlike in the State Action, Plaintiffs now assert for the first time that Defendants bear vicarious liability for their claims against Home, and add claims for fraudulent transfer, interference with contractual relations and contribution.

Defendants answered the Complaint on May 1, 2009, denying all liability and asserting various affirmative defenses.  (Ex. 18 (Answer).)

## STANDARD OF REVIEW

When reviewing a complaint on a motion for judgment on the pleadings pursuant to Rule 12(c), the Court must accept material facts as alleged and construe reasonable inferences in the plaintiff's favor.  See Syverson v. Firepond, Inc., 383 F.3d

745, 749 (8th Cir. 2004).[3]  Nevertheless, a court need not accept as true wholly

conclusory allegations, Hanten v. School District of Riverview Gardens, 183 F.3d 799,

805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged.

Westcott, 901 F.2d at 1488.  As the Supreme Court recently held, while a complaint does

not require "detailed factual allegations":

> A pleading that offers labels and conclusions or a formulaic
> recitation of the elements of a cause of action will not do….
>
> [A] complaint must contain sufficient factual matter, accepted
> as true, to state a claim to relief that is plausible on its face….
> Where a complaint pleads facts that are merely consistent
> with a defendant's liability, it stops short of the line between
> possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted).

When considering a motion under Rule 12(c), the Court "may consider, in

addition to the pleadings, materials 'embraced by the pleadings' and materials that are part

of the public record," including prior pleadings, orders, judgments, public hearing

transcripts, filings with the Securities and Exchange Commission, and newspaper articles.

In re K-tel Int'l Inc., Secs. Litig., 300 F.3d 881, 889 (8th Cir. 2002).[4]

---

[3]   The standard for a Rule 12(c) motion is identical to the standard used to review a
motion under Rule 12(b)(6).  Westcott v. City of Omaha, 901 F.2d 1486, 1488
(8th Cir. 1990).

[4]   See also Fla. State Bd. of Admin. v. Green Tree Fin. Corp., 270 F.3d 645, 663 (8th
Cir. 2001) (SEC filings); Hart v. Comm'r, 730 F.2d 1206, 1208 n.4 (8th Cir. 1984)
(proceedings in other courts relating directly to matters at issue in current case);
Markewich ex rel. Medtronic, Inc. v. Collins, No. 08-92, 2009 WL 1323827, at *4
(D. Minn. May 11, 2009) (newspaper articles); Sladek v. Northwest Airlines, Inc.,
No. 01-70, 2001 WL 1640054, at *2 n.2 (D. Minn. Sept. 21, 2001) (hearing

**ARGUMENT**

I. **PLAINTIFFS LACK STANDING TO BRING THEIR CLAIMS.**

Plaintiffs lack standing to pursue their claims, because such claims can only be maintained by Home's Liquidator.  Upon entry of the Liquidation Order, the New Hampshire Liquidation Court appointed a Liquidator to step into the shoes of Home, and vested the Liquidator with exclusive standing to prosecute claims on behalf of Home and its policyholders.  See N.H. Rev. Stat. Ann. §§ 402-C:21(I) (2009); 402-C:25(XIII), (XVIII) (2009); see also Corcoran v. Frank B. Hall & Co., 545 N.Y.S.2d 278, 282 (N.Y. App. Div. 1989).[5]  Plaintiffs are not entitled to maintain an action uniquely on their own behalf based on claims that, if they exist, by statute should be pursued by Home's Liquidator.

A. **Plaintiffs Cannot Maintain The Fraudulent Transfer Claim.**

Home's Liquidator is statutorily vested with exclusive standing to bring fraudulent transfer claims.  Motlow, 95 F.2d at 724.  "Upon the entry of [a liquidation] order the superintendent of insurance, as liquidator, becomes the statutory successor of the corporation and is vested by operation of law with title to all … choses in action [including] … the right to avoid fraudulent transfers and to recover property wrongfully transferred."  Id.; see also Neb. State Bank v. Jones, 846 F.2d 477, 478 (8th Cir. 1988); In

transcripts); McNeely v. Clayton & Lambert Mfg. Co., 292 F. Supp. 232, 235 (D. Minn. 1968) (files and records of similar case).

[5]  See also State v. Altus Fin., S.A., 36 Cal. 4th 1284 (Cal. 2005) (restitution claims); Quackenbush v. Superior Court, 79 Cal. App. 4th 867, 874-75 (Cal. Ct. App. 2000) (professional negligence and negligent misrepresentation claims); Four Star Ins. Agency, Inc. v. Haw. Elec. Indus., Inc., 89 Haw. 427, 436 n.9 (1999) (common policyholder claims).

re Michener, 217 B.R. 263, 270 (Bankr. D. Minn. 1998); Altus, 36 Cal. 4th at 1291.  A

fraudulent conveyance claim belongs to the Liquidator so that any recovery of conveyed

assets may be distributed by the Liquidation Court and shared equally by all

policyholders.  An individual policyholder like API does not have standing to recover

such alleged conveyances for itself.

### B.    Plaintiffs Cannot Maintain Any Other Common Claims.

The Liquidator has exclusive standing to pursue Plaintiffs' remaining

claims premised on indirect liability and tortious interference with contractual relations,

because they are based on injuries common to all creditors and policyholders, as opposed

to an injury unique to Plaintiffs.  See, e.g., Comm'r of Ins. v. Arcilio, 561 N.W.2d 412,

419 (Mich. Ct. App. 1997) (Common claims are "claims based on injuries common to all

policyholders[.]  [Such claims] must be maintained by the rehabilitator [or liquidator] in

his representative capacity for their collective benefit."); In re Bridge Info. Sys., Inc., 344

B.R. 587, 594 (E.D. Mo. 2006) (applying bankruptcy law).

Regardless of their packaging, Plaintiffs' remaining claims rest on the

theory that Defendants exercised control over Home and purportedly mismanaged

Home's business and otherwise diminished the assets that Home otherwise might have

had to pay policyholder claims.  Plaintiffs allege that the actions of Zurich and Home led

to Home's insolvency and inability to pay Plaintiffs' claims:

- "Zurich was aware of Home's contractual obligations to provide API *and other companies* with insurance coverage.  Instead of using its control over Home to make sure that those coverage claims were paid, Zurich *mismanaged Home's business and drained Home's assets* for its own benefit…. This *lead [sic] to*

- 14 -

*Home's insolvency* and its inability to compensate Plaintiffs."  (Complaint ¶ 6 (emphases added).)

- "Zurich was also aware of Home's obligations to pay coverage to API *and other insured companies*."  (Id. ¶ 42 (emphasis added).)
- "Zurich represented that *Home's policyholders* would have access to Zurich's financial resources.  Instead of using its control over Home to pay *policyholders'* coverage claims, Zurich directed Home to contest those claims."  (Id. ¶ 43 (emphases added).)

Thus, the injury that Plaintiffs claim to have suffered "is the same as all others:  no monies available to pay their claims."  Fla. Dep't of Ins. v. Chase Bank of Tex. Nat'l Ass'n, No. 3:99CV1254, 2000 WL 36065, at *5 (N.D. Tex. Jan. 14, 2000); see also Glushakow v. Confederation Life Ins. Co., No. 94-4201, 1994 WL 803204, at *10 (D.N.J. Dec. 5, 1994).

        The Complaint contains no allegation that Defendants engaged in any improper conduct directed uniquely at API.  The allegations supporting the Home Insurance Claims recite only *Home's* conduct.  (See, e.g., Complaint ¶¶ 26-31, 35-37.) According to the Complaint, "Plaintiffs allege that Zurich is now responsible for the obligations *of Home* under the Home Policies including responsibility for *Home's* improper handling of the Asbestos-Related Claims."  (Id. at ¶38 (emphases added).) Plaintiffs' claims against Defendants for *Home's* conduct rest entirely on theories of vicarious liability, which in turn rest entirely on allegations concerning Defendants' conduct toward *Home*, not toward API.  Plaintiffs "cannot disguise the fact that [they are] attempting to push [their] way to the front of the line of creditors, rather than seeking redress for a unique injury."  In re Cent. Heating & Air Conditioning, Inc., 64 B.R. 733, 737 (Bankr. N.D. Ohio 1986).  Because their claims are common to all policyholders of

Home, Plaintiffs' claims can only be asserted by the Liquidator.  See Corcoran, 545

N.Y.S.2d at 279; Four Star, 89 Haw. at 1020 (same).[6]  Indeed, other courts analyzing

almost identical alter ego allegations resulting from Home's Recapitalization have

determined as much.  See Brooklyn Union Gas Co. v. Century Indem. Co., No.

403087/2002, 2005 WL 6226508 (N.Y. Sup. Ct. Jan. 10, 2005); Consol. Edison Co. of

N.Y., Inc. v. Am. Home Assurance Co., No. 0600527/2001, slip op. at 3-4 (N.Y. Sup. Ct.

Mar. 29, 2005).  Plaintiffs' claims should be dismissed for lack of standing.

## II.   ALL CLAIMS ARISING AFTER MARCH 5, 2003 THAT ARE BASED ON DEFENDANTS' ALLEGED VICARIOUS LIABILITY FOR HOME'S CONDUCT FAIL AS A MATTER OF LAW.

As of March 5, 2003, the NHID assumed complete control over the affairs

of Home.  On that day, the Superior Court of New Hampshire appointed the

Commissioner as the Rehabilitator of Home.  (Ex. 2 (Rehabilitation Order) at 1.)  The

Commissioner secured "all of the assets" of Home and, by operation of law, the "powers

of the officers and managers of the Home" were suspended and given to the

Commissioner.  (Id. at 1 ¶¶ (c) & (d).)  Thus, as of March 5, 2003, the Commissioner had

sole authority to decide whether or not to "pay any and all claims for losses … under

policies and contracts of insurance" issued to API or other insureds of Home.  (Id. at 3

¶ (h).)  Once the NHID assumed complete control over the affairs of Home, the potential

for imposition of vicarious liability – or any form of liability based on Home's conduct –

---

[6]     See also In re Real Mktg. Servs., LLC, 309 B.R. 783, 788 (S.D. Cal. 2004) (liquidator's exclusive standing encompasses tortious interference claims where "the gravamen of the complaint is injury to the corporation … or [the plaintiff] seeks to recover assets for the corporation or to prevent the dissipation of its assets" (internal quotations omitted)).

upon Defendants ceased.  Defendants are therefore entitled to judgment as a matter of law on Plaintiffs' alter ego, *respondeat superior* and joint venture allegations to the extent that they seek to impose liability for any claim that accrued after March 5, 2003, the date of the Rehabilitation Order.

> **A.      Defendants Cannot Be Alter Egos Of Home After The NHID Took Control Of Home As A Matter Of Law.**

In deciding whether to pierce the corporate veil, Minnesota courts apply the two-prong test in <u>Victoria Elevator</u>, 283 N.W.2d at 512.[7]  The first prong considers eight factors in determining whether the corporation maintains a sufficiently separate corporate identity, and the second prong requires proof of "an element of injustice or fundamental unfairness."  <u>Id.</u>  The goal is to vindicate the following principle:  "[W]here the formalities of corporate existence are disregarded by one seeking to use it, corporate existence cannot be allowed to shield the individual from liability for damages incurred by those dealing with the corporation."  <u>Id.</u>

Once the NHID took over Home, there was no way for Defendants to have disregarded the separate corporate existence of Home.  After March 5, 2003, only the Rehabilitator had the "powers of the officers and managers of the Home."  (Ex. 2 at 1 ¶ (c).)  After the Commissioner assumed control over Home, including all decision-making authority, the existence of Home could not, *as a matter of law*, be a mere a façade

---

[7]      Generally, federal courts look to state law to determine if a corporate entity is an alter ego.  <u>United States v. Spencer</u>, No. Civ. 04-141, 2005 WL 2648688, at *5 (D. Minn. Oct. 17, 2005).  In Minnesota, the burden is on the party asserting the existence of an alter ego relationship to prove that such a relationship exists. <u>Davis v. Johnson</u>, 415 N.W.2d 755, 759 (Minn. App. 1987).

for the individual dealings of Defendants.  See Ass'n of Mill and Elevator Mut. Ins. Co. v. Barzen Int'l, Inc., 553 N.W.2d 446, 450-51 (Minn. App. 1996); see also Busch v. Mann, 397 N.W.2d 391, 395-96 (Minn. App. 1986), abrogated on other grounds, Valspar Corp. v. Lukken Corp., 495 N.W.2d 408 (Minn. 1992).  Plaintiffs' theory of alter ego after Home's Rehabilitation thus fails as a matter of law.

   B.   **Plaintiffs' *Respondeat Superior* Allegations Fail As A Matter Of Law After The NHID Took Control Of Home.**

      To determine whether the doctrine of *respondeat superior* will apply, a court must consider whether the principal has the right to control the agent.  See Urban v. Am. Legion Post 184, 695 N.W.2d 153, 160 (Minn. App. 2005) ("The right to control … gives rise to the vicarious liability of a principal or master for the tortious act of his or her agent.").  An entity may be vicariously liable only for the actions of others over whom it exercises control.  Clos v. Minn., No. 06-4916, 2007 WL 3046229, at *1 (D. Minn. Oct. 16, 2007).

      The potential for any control by Defendants over Home, including any ability to transfer Home's assets or to control whether Home would pay API's claims under the Policies, ended on March 5, 2003 when the Commissioner was appointed as the Rehabilitator of Home and assumed complete control of Home's operations.  (Ex. 2 at 1.) Plaintiffs' theory of *respondeat superior* after Home's Rehabilitation fails as a matter of law.

C.      **Plaintiffs' Joint Venture Allegations Fail As A Matter Of Law After The NHID Took Control Of Home.**

A party claiming that a business relationship is a joint venture must demonstrate:  (1) contribution by the parties of their resources to a common undertaking; (2) joint control over the enterprise; (3) profit sharing; and (4) an express or implied contract showing the existence of a joint venture.  See Rehnberg v. Minn. Homes, Inc., 52 N.W.2d 454, 457 (Minn. 1952); Duxbury v. Spex Feeds, Inc., 681 N.W.2d 380, 390 (Minn. App. 2004).  "[W]here no competent evidence will support a finding of joint venture, the district court may decide the issue as a matter of law."  Duxbury, 681 N.W.2d at 389.  Moreover, "[t]he negation by a claimant of even a single element [of a joint venture claim] is enough to grant a motion to dismiss."  Amasia Acoustics, LLC v. GN Hearing Care Corp., No. A08-0139, 2008 WL 5137087, at *2 n.2 (Minn. App. Feb. 17, 2009).

Any allegation that Defendants exercised joint control over Home fails as a matter of law once the NHID assumed complete control of Home pursuant to the Rehabilitation Order.  Amasia, 2008 WL 5137087, at *2 n.2.  Similarly, any allegation that Defendants shared profits with Home, as implausible as that allegation is in any time period given the NHID's close supervision of Home, is impossible to sustain once the NHID took control of all of Home's assets.  (Ex. 2 at 1.)  Because Plaintiffs cannot establish these two key elements of a joint venture claim after March 5, 2003, their theory of joint venture liability after Home's Rehabilitation fails as a matter of law.[8]

---

[8]      Nor can Plaintiffs establish the existence of a contract creating a joint venture.

### III.   PLAINTIFFS' REMAINING CLAIMS ARE TIME-BARRED.

At the longest, Plaintiffs' claims are governed by six-year statutes of limitations.  To the extent they are independently actionable, Causes of Action 1, 2, 3, 5, 8,[9] and 13 are governed by Minn. Stat. § 541.05(1) (2000) (contract claims, six years); Causes of Action 6, 7 and 11 by Minn. Stat. § 541.05(6) (fraud claims, six years); and Cause of Action 10 by Minn. Stat. § 541.05(2) (statutory cause of action, six years).[10] Plaintiffs commenced this action, for purposes of the applicable statutes of limitations, at the earliest, on March 25, 2009, the alleged date of service.  See Concordia Coll. Corp. v. W.R. Grace & Co., 999 F.2d 326, 330-31 (8th Cir. 1993).  The Court should find as a matter of law that Plaintiffs' claims accruing before March 25, 2003 are time-barred.

### A.   Plaintiffs' Fraudulent Transfer Claim Is Time-Barred.

A fraudulent transfer claim begins to run, at the latest, when "the facts constituting the fraud are deemed to have been discovered or when, with reasonable diligence, they could and ought to have been discovered."  Klehr v. A.O. Smith Corp., 87 F.3d 231, 235 (8th Cir. 1996); see also Minn. Stat. § 541.05(6).  There is "a standard of objective reasonableness upon a plaintiff to discover the facts constituting the fraud."

---

[9]   See Wallin v. Minn. Dep't of Corr., 598 N.W.2d 393, 401 (Minn. App. 1999) (tortious interference with contract governed by Minn. Stat. § 541.05(1)).

[10]   Causes of Action 9, 12 and 14 – seeking declarations that Defendants are obligated to satisfy Home's alleged liabilities under alter ego, *respondeat superior* and joint venture theories of liability, respectively – are not independent causes of action, but rather legal theories pursuant to which a plaintiff may hold a party vicariously liable for the acts of a third party.  See, e.g., Tamko Roofing Prods., Inc. v. Smith Eng'g Co., 450 F.3d 822, 826 (8th Cir. 2006) (alter ego); Steele v. Armour & Co., 583 F.2d 393, 394 (8th Cir. 1978) (*respondeat superior* and joint venture).  These counts cannot survive as stand-alone claims.

Klehr, 87 F.3d at 235.  Thus, dismissal is appropriate when the facts from which

knowledge may be imputed are clear from publicly available documents.[11]  See Great

Plains Trust Co. v. Union Pac. R.R., 492 F.3d 986, 994-95 (8th Cir. 2007).

        The Complaint states that through the Recapitalization, "Zurich obtained

Home's assets."  (Complaint ¶ 39.)  The Complaint further purports to list and

characterize "some" of the agreements constituting the Recapitalization in support of this

claim.  (Id. ¶ 46.)  Plaintiffs cannot plausibly suggest that they were not able to discover

the facts surrounding the Recapitalization when it happened.  The Recapitalization

agreements were disclosed to the NHID and to the public through SEC filings.  (Ex. 1

(Approval Order) at 4-5, 10; Ex. 19 (HHI 1994 10-K) at 4-9, 52-58, 63-64, 95-101, 114-

16, 121-26, Exs. 10.1(g), 10.1(h), 10.1(i), 10.2, 10.2(a).)[12]  In addition, the proceedings

before the NHID were public (see Ex. 1 (Approval Order) at 2), and statutorily mandated

notice was given to all of Home's policyholders.  See N.H. Rev. Stat. Ann. § 401-

B:3(VI)(b).  National media published articles about the Recapitalization throughout

1995.  (Ex. 22 (2/02/1995 WSJ Article) at A5; Ex. 23 (3/29/1995 NY Times Article) at

---

[11]    See also Hagert v. Glickman, Lurie, Eiger & Co., 520 F. Supp. 1028, 1032-33 (D. Minn. 1981); In re Vioxx Prods. Liab. Litig., 522 F. Supp. 2d 799, 808-10 (E. D. La. 2007); Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt., L.P., 435 F.3d 396, 401 (3d Cir. 2006).

[12]    See also Ex. 20 (HHI 1Q 1995 10-Q) at 4-5, 14-25, 29-34; Ex. 21 (HHI 2Q 1995 10-Q) at 4-6, 9, 11-14, 20-24, 26-28.

D7.)[13]  Because Plaintiffs were on notice of any conveyance nearly fourteen years before

Defendants were served, the fraudulent transfer claim is time-barred.

**B.      Plaintiffs' Tortious Inference With Contractual Relations Claim Is Time-Barred.**

Plaintiffs allege that Defendants "engaged in conduct with the intent to

procure Home to breach its contract with API without justification."  (Complaint ¶ 91.)

Plaintiffs do not further define the "conduct," except to state that "Zurich's acts resulted in

Home breaching its contracts with API, prevented performance under those contracts,

and resulted in Home's failure or inability to meet its contractual obligations to

Plaintiffs."  (Id. ¶ 92.)  This is a reference to the same acts that underlie Plaintiffs'

fraudulent transfer claim, namely, the Recapitalization through which Defendants

supposedly stripped Home's ability to pay API's claims.  (See id. ¶ 6.)

A tortious interference with contractual relations claim accrues when the

event causing the interference occurs.  See Medcam, Inc. v. JDS Uniphase Corp., No. 06-

1509, 2006 WL 2095434, at *3 (D. Minn. July 27, 2006).  Because the Recapitalization

occurred fourteen years ago, Plaintiffs' Eighth Cause of Action is time-barred.

**C.      The Home Insurance Claims Are Time-Barred.**

1.      *Causes of Action 1, 2, 3 and 13.*

The Home Insurance Claims allege that Defendants are vicariously liable

for Home's conduct under the Home Policies.  The First and Second Causes of Action,

---

[13]      See also Ex. 24 (3/20/1995 WSJ Advertisement) at C5; Ex. 25 (5/16/1995 WSJ Article) at C21; Ex. 26 (5/31/1995 WSJ Article) at B8; Ex. 27 (1/09/1995 NY Times Article) at D4.

requesting declaratory relief, assert that Defendants are vicariously liable for Home's duty to defend and indemnify API under the Home Policies.  (Complaint ¶¶ 47-58.)  The Third and Thirteenth Causes of Action, alleging breach of contract and tortious breach of the implied covenant of good faith and fair dealing, seek to hold Defendants vicariously liable for Home's alleged breach of contract.  (Complaint ¶¶ 59-63, 115-119.)  These claims accrued when API became legally obligated to pay damages allegedly covered by the Home Policies.  See Nw. Nat'l Ins. Co. ex rel Swanberg v. Carlson, 711 N.W.2d 821, 824-25 (Minn. App. 2006); Johnson v. City of Shorewood, No. A06-2353, 2008 WL 434680 (Minn. App. Feb. 19, 2008) (citing Cope v. Anderson, 331 U.S. 461, 464 (1947)).

The State Complaint demonstrates that these claims accrued before March 25, 2003.  In the State Complaint, dated August 20, 2002, API made the same underlying allegations against Home.  (Compare Ex. 13 (State Complaint) ¶¶ 2, 6-10, 13, 21, 28, 31-34, 35-49 with Complaint ¶¶ 20-21, 25, 33-37, 47-63, 115-119.)[14]  Because Causes of Action 1, 2, 3 and 13 had accrued against Home, and thus against Defendants under various theories of vicarious and successor liability, by August 2002, they are now time-barred.  See Lingenfelter v. Stoebner, No. 03-CV-5544, 2005 WL 1225950, at *4 (D. Minn. May 23, 2005) (prior litigation of similar claims demonstrates time bar).

---

[14]  Although API did not allege a tortious breach of the implied covenant of good faith and fair dealing claim against Home in 2002, the allegations supporting this new legal theory were made in the State Action.  (Compare State Complaint ¶ 21 with Complaint ¶ 117.)

2.      *Causes of Action 5, 7 and 11.*

The State Complaint also demonstrates that the Fifth, Seventh and Eleventh Causes of Action are time-barred.  In these claims, Plaintiffs allege that Home improperly apportioned API's defense and indemnity payments under the contract (Fifth), in bad faith (Seventh) or fraudulently (Eleventh).  (Complaint ¶¶ 67-70, 80-87, 105-108.)  API made these same allegations against Home in 2002.  (Ex. 13 (State Complaint) ¶¶ 19-24, 50-61.)

Notably, the Complaint repeats the State Complaint's allegation that the purported "misrepresentation" or "misallocation" of payments had occurred by "December 12, 2001, [when] Home advised API that 'Home insurance has $174,569.00 remaining in primary limits.'"  (Complaint ¶ 26; Ex. 13 (State Complaint) ¶ 19.)  Whether these claims sound in contract or fraud, API clearly had these claims – and knew it did – in August of 2002 when it brought them the first time.  Therefore, these claims are time-barred.

3.      *Cause of Action 10.*

Plaintiffs' Tenth Cause of Action, for statutory fraud under the Minnesota Consumer Protection Act (the "MCPA"), is decades late.  A statutory consumer fraud claim "accrue[s] at the time the alleged statutory violation occurred."  Parkhill v. Minn. Mut. Life Ins. Co., 174 F. Supp. 2d 951, 957 (D. Minn. 2000); Veldhuizen v. A.O. Smith Corp., 839 F. Supp. 669, 676-77 (D. Minn. 1993).  Plaintiffs allege that Home misrepresented the scope of coverage provided in the Home Policies "in its marketing and sale of the respective policies to API."  (Complaint ¶ 102.)  Plaintiffs also allege that

API purchased the Home Policies in the 1970s, thereby conceding that their MCPA claim

is time-barred.  (Complaint ¶ 25.)

## IV.  PLAINTIFFS' VICARIOUS LIABILITY THEORIES ALSO FAIL AS A MATTER OF LAW.

### A.  The NHID Orders Demonstrate That Plaintiffs' Alter Ego And *Respondeat Superior* Theories Fail As A Matter Of Law.

Plaintiffs' alter ego and *respondeat superior* claims arising prior to Home's

Rehabilitation are not only time-barred, but untenable as a matter of law.  The NHID's

Consent Order and Order of Supervision demonstrate that after the Recapitalization,

Home operated under active and daily oversight of the NHID.  Immediately following the

Recapitalization, the NHID issued the Consent Order, which placed a representative at

Home's offices to oversee the runoff.  (Ex. 11 at 1 ¶ 1.)  This representative monitored the

day-to-day operations of Home until Home was placed into receivership.  (Id.)  In March

1997, the Commissioner entered the Order of Supervision with respect to Home, which

further strengthened the NHID's oversight over Home's affairs.  (Ex. 12 at 2 ¶ 6.)  In

particular, the Order of Supervision severely restricted transactions between Home and

any party, including Defendants, subjecting any transactions involving Home to NHID

approval.  (Id.)  These facts are fatal to Plaintiffs' alter ego and *respondeat superior*

claims.

As to Plaintiffs' alter ego theory, the Complaint fails to allege any concrete

facts suggesting that the separate corporate existences of Defendants and Home were

disregarded.  In fact, the Approval Order establishes that, after the Recapitalization,

Home would continue to operate as a separate entity under the direct supervision of the

NHID.  (Ex. 1 (Approval Order) at 7-8; <u>see also</u> Ex. 12 (Order of Supervision) at 2 ¶ 2.)

Moreover, Plaintiffs have not demonstrated that Home was operated "as a constructive

fraud or in an unjust manner."  <u>White v. Jorgenson</u>, 322 N.W.2d 607, 607 (Minn. 1982).

The Complaint fails to allege that Defendants engaged in any fraudulent or wrongful

conduct directed at API.  Indeed, the Recapitalization, on which Plaintiffs' fraudulent

transfer claim is based, was approved as fair and reasonable to policyholders.  (Ex. 1

(Approval Order) at 7.)  Moreover, any suggestion that Defendants operated Home in a

fraudulent manner is implausible in light of the NHID's close supervision of Home.  <u>See</u>

<u>Iqbal</u>, 129 S. Ct. at 1941; (Ex. 1 (Approval Order) at 7-8; Ex. 11 (Consent Order) at 1-4;

Ex. 12 (Order of Supervision) at 1-5.)  As such, no injustice could result from

recognizing the corporate separateness between Home and Defendants, particularly

where, as here, the Complaint does not allege that Defendants used Home to escape

liability to Plaintiffs.  <u>See</u> <u>SICK, Inc. v. Motion Control Corp.</u>, No. 01-1496, 2003 WL

21448864, at *9 (D. Minn. June 19, 2003) ("The alter ego doctrine also does not apply

because [plaintiff] has not properly pleaded that 'injustice or fundamental unfairness'

exists.").

> With respect to Plaintiffs' *respondeat superior* theory, Plaintiffs must show

that Defendants had the right to control Home, which they cannot do.  <u>Urban</u>, 695

N.W.2d at 160.  After the Recapitalization, the NHID actively oversaw Home's

operations until its Liquidation.  (Ex. 1 (Approval Order) at 7-8; Ex. 12 (Order of

Supervision) at 2.)  As a result, Plaintiffs' argument that Defendants controlled – or had

the right to control – Home through a principal-agent relationship is implausible as a matter of law.  See Iqbal, 129 S. Ct. at 1941.

**B.      Plaintiffs' Joint Venture Claim Fails As A Matter Of Law.**

None of the Recapitalization Agreements cited by the Complaint contains any term evidencing a joint venture relationship.  (See Complaint ¶ 46; c.f. Ex. 4 (Feb. 9, 1995 Recapitalization Agreement); Ex. 5 (June 12, 1995 Reinsurance Agreement) at 1; Ex. 6 (June 12, 1995 Services Agreement) at 1-6; Ex. 7 (June 12, 1995 Portfolio Swap Agreement) at 1; Ex. 8 (June 12, 1995 Renewal Rights Agreement) at 1).  Absent an agreement between Home and Defendants to enter into a joint venture, the cause of action fails.  See Virnig v. Smith, 90 N.W.2d 241, 244 (Minn. 1958) ("[T]here must be a contract, express or implied, showing that [the partners] did in fact intend to enter into a joint adventure.").  Likewise, Plaintiffs do not allege that Defendants and Home contributed their resources to a common undertaking.  See Rehnberg, 52 N.W.2d at 457.

**V.      THE COMPLAINT FAILS TO PROVIDE A BASIS FOR SUCCESSOR LIABILITY.**

Although the Complaint states in a conclusory manner that Defendants are Home's "successor," this allegation is not developed in the Complaint.  This is not surprising, because any such allegation is entirely inconsistent with publicly available facts.  Indeed, following Home's liquidation and the entry of the Liquidation Order, the Commissioner, as Home's Liquidator, became "the statutory successor" of Home.  See Motlow, 95 F.2d at 724; see also N.H. Rev. Stat. Ann. § 402-C:21 (vesting the Liquidator with title to all property of the debtor).

The rule for successor liability is that "where one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor," unless one of four limited exceptions apply. Niccum v. Hydra Tool Corp., 438 N.W.2d 96, 98 (Minn. 1989); see also Ford Motor Credit Co. v. Midwest Diesel Serv., Inc., Nos. Civ. 02-2924, 02-2925, 2003 WL 22901837, at *2-3 (D. Minn. Nov. 26, 2003).  It is unnecessary to determine whether any of the four exceptions apply, because Plaintiffs do not allege that all, or even substantially all, of Home's assets were transferred to any of Defendants.  (See, e.g., Complaint ¶¶ 6, 41, 44.)  Indeed, such an allegation even if made would be false.

The Recapitalization Agreements cited by Plaintiffs demonstrate that all of Home's reserves and reinsurance contracts – including the new $1.3 billion reinsurance contract – were retained by Home.  (See Ex. 9 (June 12, 1995 Investment Management Agreement) at 4 § 3.1 ("All investments including futures contracts and options comprised in the Portfolio will be the property of [Home entities] … [and] [a]ny cash forming part of the Portfolio will be held in [Home entities'] accounts …."); c.f. Ex. 7 (June 12, 1995 Portfolio Swap Agreement) at 1 ("in connection with the Recapitalization, Home … will maintain in force its currently issued insurance policies and will pay any claims thereunder and operating expenses …").)  Indeed, throughout the New Hampshire approval proceedings, it was clear to all involved that "Zurich" was not "acquiring" Home or guaranteeing Home's historical policy obligations.  (Ex. 10 (NHID Hearing Transcript Vol. I) at 50, 90 ("Zurich [did] not purchase the Home, operate it as an operating company and guarantee its obligations to policyholders[.]").)  And the

Approval Order demonstrates that the assets of Home available to policyholders after the Recapitalization <u>increased</u> by "at least" $500 million.  (Ex. 1 at 6.)

Plaintiffs' bald assertion of successor liability "stops short of the line between possibility and plausibility of entitlement to relief" and fails to state a claim.  <u>See</u> <u>Iqbal</u>, 129 S. Ct. at 1949; <u>see</u> <u>also</u> <u>Schermer v. BCBSM, Inc.</u>, No. 08-878, 2009 WL 928314, at *6 (D. Minn. Mar. 31, 2009) (granting motion to dismiss where "plaintiffs fail[ed] to state a claim that is plausible on its face").

## VI.   PLAINTIFFS' CONTRIBUTION CLAIM FAILS AS A MATTER OF LAW.

Plaintiffs' contribution claim fails for several reasons.  <u>First</u>, a contribution claim requires a common liability to Plaintiffs.  <u>See, e.g.</u>, <u>Nuessmeier Elec., Inc. v. Weiss</u> <u>Mfg. Co.</u>, 632 N.W.2d 248, 251 (Minn. App. 2001).  For the reasons stated above, Plaintiffs' so-called contribution rights are worthless against Defendants, because the claims that Plaintiffs assert belong to the Liquidator – not Plaintiffs – and therefore Defendants and the Settling Insurers do not share a common liability to Plaintiffs.

<u>Second</u>, a contribution claim requires an allegation that the Settling Insurers paid more than their fair share of a common liability.  <u>See</u> <u>id.</u>; <u>Bekis v. Schilling</u>, 357 N.W.2d 362, 364 (Minn. App. 1984).  The Complaint merely suggests that "to the extent that" one of the Settling Insurers paid more than its fair share, contribution would be appropriate.  (Complaint ¶ 66.)  This conditional formulation cannot substitute for a claim that the Settling Insurers overpaid.  Absent such an allegation, the contribution claim fails.

Third, given that Plaintiffs are pursuing direct claims against Defendants, it is clear that the settlement with the Settling Insurers did not extinguish Home's tort liability.  As a result, the Settling Insurers could not have had tort-based contribution rights to assign, because "a settling tortfeasor can only pursue contribution against a non-settling tortfeasor if the settlement extinguished the liability of the non-settling tortfeasor."  Nuessmeier, 632 N.W.2d at 253; see also Reserve Ins. Co. v. Village of Big Lake, 230 N.W.2d 47, 50 (Minn. 1975).

Fourth, any contribution claim is barred by the doctrine of laches.  A contribution claim accrues when an entity entitled to contribution sustains damage by paying more than its fair share of the joint obligation.  See Weston v. McWilliams & Assocs., Inc., 716 N.W.2d 634, 639 n.1 (Minn. 2006).  By taking assignments of the Settling Insurers' contribution rights, Plaintiffs are attempting to evade the statutes of limitations that do not allow them to bring their claims directly against Defendants.  In the guise of a contribution claim, Plaintiffs seek to force Defendants, as the purported proxy for Home, to try claims that are well over seven years old (to determine whether Defendants have any liability from which a contribution claim could stem), and to redo six years of litigation between Plaintiffs and the Settling Insurers to determine whether the Settling Insurers overpaid.  Such a result would be inequitable.  See Goodman v. McDonnell Douglas Corp., 606 F.2d 800, 805 (8th Cir. 1979) (laches involves "inequity founded upon some change in the condition or relations of the property or the parties" (citation omitted)); Jones v. Boyd Transfer & Storage Co., 323 F.2d 998, 1003 (8th Cir. 1963) ("A party is held barred where the delay is so long and the circumstances of such

character as to establish a relinquishment or abandonment of the right."); Avondale

Shipyards, Inc. v. Vessel Thomas E. Cuffe, 434 F. Supp. 920, 932-37 (E.D. La. 1997)

(contribution claim barred by laches).  Such a result would be particularly inequitable

here, where the delay was caused entirely by Plaintiffs' self-inflicted failure to bring their

claims against Defendants when they sued the Settling Insurers.

## VII.   THIS COURT SHOULD DECLINE JURISDICTION OVER PLAINTIFFS' CLAIMS AS A MATTER OF COMITY.

To the extent that the Court concludes that Plaintiffs' claims are not

otherwise barred, it should decline to exercise jurisdiction over them on the ground that

the Liquidation Order vesting ownership of these claims in the Liquidator is entitled to

comity.  New Hampshire law, like Minnesota law, provides that, upon liquidation, all

actions and proceedings against an insurer are abated.  See N.H. Rev. Stat. Ann. § 402-

C:28(I) (2009).  Accordingly, after Home went into liquidation, the New Hampshire

Court issued an order barring all actions against Home and its agents, and asking for the

"aid and recognition of any Court … in any state … to act in aid of and to be

complementary to the [New Hampshire] Court in carrying out the terms of the

[Liquidation] Order."  (Ex. 3 (Liquidation Order) at 3-5 ¶¶ (m-o).)  Because New

Hampshire and Minnesota are "reciprocal states" under the Insurers Rehabilitation and

Liquidation Act (the "IRLA") – and because the IRLA's purpose is to lessen "the

problems of interstate rehabilitation and liquidation by facilitating cooperation between

states in the liquidation process," see Minn. Stat. § 60B.01 (2005) – courts of this State

are duty bound to respect the Liquidation Order and decline jurisdiction in a case brought

against Home's purported agent and alter ego.

> Minnesota defines a reciprocal state as:
>
> [A]ny state other than this state in which in substance and
> effect sections 60B.21, subdivision 1; 60B.54, subdivisions
> 1 and 3; 60B.55; and 60B.57 to 60B.60; are in force, and in
> which provisions are in force requiring that the commissioner
> be the receiver of a delinquent insurer, and in which some
> provision exists for the avoidance of fraudulent conveyances
> and preferential transfers.

Minn. Stat. § 60B.03(10) (2005).  The statutory provisions mentioned above are all

included in the New Hampshire statute.  See N.H. Rev. Stat. Ann. §§ 402-C:21(I) (2009);

402-C:54(I, III) (2009); 402-C:55 (2009); 402-C:57 (2009); 402-C:58(I) (2009); 402-

C:59 (2009); 402-C:60 (2009).  Further, New Hampshire has in force provisions

requiring that the Commissioner be the receiver of a delinquent insurer, id. § 402-

C:21(I)) (2009), and provisions for the avoidance of fraudulent conveyances and

preferential transfers, id. §§ 402-C:30-32 (2009).  Therefore, New Hampshire is a

reciprocal state.

Plaintiffs sued Defendants under the theory that they – as principals,

successors, alter egos, or otherwise – have stepped into the shoes of Home.  Given these

assertions, the abatement provisions of the Liquidation Order apply to Defendants.  Out

of respect for the Liquidation Order issued by the court of a reciprocal state, as a matter

of comity, this Court should decline jurisdiction and dismiss the case against Defendants.

(See Ex. 3 (Liquidation Order) at 3 ¶¶ (j), (k) & (m).)  See Brooklyn Union, 2005 WL

6226508 (affording full faith and credit to the Liquidation Order's stay and dismissing

alter ego claims against certain Zurich entities because New Hampshire is a "reciprocal state"); <u>Consolidated Edison</u>, No. 0600527/2001, slip op. at 3-4 (same); <u>see</u> <u>also</u> <u>Olivine Corp. v. United Capitol Ins. Co.</u>, 122 Wash. App. 374, 379 (Wash. Ct. App. 2004) (honoring Illinois abatement order); <u>Frontier Ins. Co. v. Am. Title Servs.</u>, 838 So. 2d 1178, 1179 (Fla. Ct. App. 2003) (honoring a New York stay order in Florida).[15]

---

[15]    <u>See</u> <u>also</u> <u>Isermann v. MBL Life Assurance Corp.</u>, 605 N.W.2d 210, 217 (Wis. Ct. App. 1999) (extending comity to New Jersey rehabilitation order).  <u>But</u> <u>cf.</u> <u>Fuhrman v. United Am. Insurors</u>, 269 N.W.2d 842, 847-48 (Minn. 1978) (refusing to give comity to foreign injunction, but without considering reciprocity or the statutory purpose of the IRLA).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court enter judgment on the pleadings and dismiss this action pursuant to Federal Rule of Civil Procedure 12(c).

Dated:  July 17, 2009

COUSINEAU McGUIRE CHARTERED

Of Counsel:

Richard Mancino
Russell D. Morris
Jodi B. Leibowitz
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

Joseph G. Davis
WILLKIE FARR & GALLAGHER LLP
1875 K Street
Washington, DC 20006
(202) 303-1000

By: /s/ Peter G. Van Bergen
    Peter G. Van Bergen #112033
    Andrea E. Reisbord #22411X
    1550 Utica Avenue South, Suite 600
    Minneapolis, Minnesota 55416-5318
    (952) 546-8400
    pvb@cousineaulaw.com

*Attorneys for Defendants Zurich
American Insurance Company, Zurich
American Insurance Company of
Illinois, and Steadfast Insurance
Company*

5023197

- 34 -